IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY and NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Case No. 3:10CV37 |
| v. | ) ) | |
| THE OVERLOOK, LLC, STEVEN A. MIDDLETON, VISTA MIDDLETON, LLC and RICKY L. EDMONDS, | ) ) ) ) ) | |
| Defendants. | ) | |

JAN 19 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company and Nationwide Property & Casualty Insurance Company, by and through their undersigned counsel, for their Complaint for Declaratory Judgment against Defendants The Overlook, LLC, Steven A. Middleton, Vista Middleton, LLC and Ricky L. Edmonds, state and allege as follows:

### INTRODUCTION

1.      This is an action pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, to determine a real and justiciable controversy among the parties with respect to their rights and obligations, if any, under certain insurance contracts in connection with the certain underlying matters described more fully below.

## PARTIES

2.      Plaintiff Nationwide Mutual Insurance Company ("Nationwide Mutual") is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio.

3.      Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide Mutual Fire") is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio.

4.      Plaintiff Nationwide Property & Casualty Insurance Company ("Nationwide Property") is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio.

5.      Plaintiffs Nationwide Mutual, Nationwide Mutual Fire and Nationwide Property are collectively referred to hereafter as "Nationwide."

6.      Defendant The Overlook, LLC ("The Overlook") is a Virginia limited liability company with, upon information and belief, its principal place of business in the Commonwealth of Virginia. Upon information and belief, no member of The Overlook is a citizen of the State of Ohio.

7.      Defendant Steven A. Middleton ("Middleton") is a natural person. Upon information and belief, Middleton is a Member of The Overlook, and is a citizen of the Commonwealth of Virginia.

8.      Defendant Vista Middleton, LLC ("Vista Middleton") is a Virginia limited liability company with, upon information and belief, its principal place of business in the Commonwealth of Virginia. Upon information and belief, no member of Vista Middleton is a citizen of the State of Ohio.

2

9.    Defendant Ricky L. Edmonds ("Edmonds") is a natural person and, upon information and belief, is a citizen of the Commonwealth of Virginia.

10.    Defendants The Overlook, Middleton and Vista Middleton are collectively referred to hereafter as "Overlook" or "Overlook Defendants."

11.    Defendants The Overlook, Middleton, Vista Middleton and Edmonds are collectively referred to hereafter as "Defendants."

## JURISDICTION AND VENUE

12.    This Court has diversity jurisdiction over the parties and this action pursuant to 28 U.S.C. §1332(a)(1).  Diversity jurisdiction exists because this action is between citizens of different states and because the amount in controversy, exclusive of interest and costs, is in excess of $75,000.00.

13.    Venue in this district is proper pursuant to 28 U.S.C. §1391(a) because Defendants reside in this district; a substantial part of the events giving rise to this action occurred in this district; and the property that is the subject of this action is located in this district.

## FACTUAL BACKGROUND

### The Nationwide Policies

14.    Overlook seeks coverage in connection with the matters described herein under certain contracts of insurance issued by Nationwide, which, subject to their terms, conditions and exclusions, provide commercial general liability insurance, commercial umbrella liability insurance and/or commercial property insurance for policy periods, as set forth in the insurance contracts, from May 1, 2003 to May 1, 2010 (collectively, "Nationwide Policies").  The Nationwide Policies include, without limitation, the following policies:

3

| Policy Number | Policy Period | Named Insured |
|---|---|---|
| ACP CPP 2403232071 | May 1, 2008 to May 1, 2009 | Overlook, LLC |
| ACP CPP 2413232071 | May 1, 2009 to May 1, 2010 | Overlook, LLC |
| 53PR 140-682-3001 | May 1, 2004 to May 1, 2005 | Overlook, LLC |
| 53PR 140-682-3001 | May 1, 2005 to May 1, 2006 | Overlook, LLC |
| 53PR 140-682-3001 | May 1, 2006 to May 1, 2007 | Overlook, LLC |
| 53PR 140-682-3001 | May 1, 2007 to May 1, 2008 | Overlook, LLC |
| ACP GLO 2403232071 | May 1, 2008 to May 1, 2009 | Overlook, LLC |
| ACP GLO 2413232071 | May 1, 2009 to May 1, 2010 | Overlook, LLC |
| 53CU 140-682-3002 | January 26, 2006 to May 1, 2005 | Overlook, LLC |
| 53CU 140-682-3002 | May 1, 2005 to May 1, 2006 | Overlook, LLC |
| 53CU 140-682-3002 | May 1, 2006 to May 1, 2007 | Overlook, LLC |
| 53CU 140-682-3002 | May 1, 2007 to May 1, 2008 | Overlook, LLC |
| ACP CAF 2403232071 | May 1, 2008 to May 1, 2009 | Overlook, LLC |
| ACP CAF 2413232071 | May 1, 2009 to May 1, 2010 | Overlook, LLC |
| 53BP 146-222-3001 | May 14, 2004 to May 14, 2005 | Overlook Condominium, LLC |
| 53BP 146-222-3001 | May 14, 2005 to May 14, 2006 | Overlook Condominium, LLC |
| 53BP 146-222-3001 | May 14, 2006 to May 14, 2007 | Overlook Condominium Unit Owners Ass'n |
| 53BP 146-222-3001 | May 14, 2007 to May 14, 2008 | Overlook Condominium Unit Owners Ass'n |
| ACP BHK 2403259793 | May 14, 2008 to May 14, 2009 | Overlook Condominium Unit Owners Ass'n |
| ACP BHK 2413259793 | May 14, 2009 to May 14, 2010 | Overlook Condominium Unit Owners Ass'n |
| 53CU 146-222-3002 | May 14, 2004 to May 14, 2005 | Overlook Condominium, LLC |
| 53CU 146-222-3002 | May 14, 2005 to May 14, 2006 | Overlook Condominium, LLC |
| 53CU 146-222-3002 | May 14, 2006 to May 14, 2007 | Overlook Condominium Unit Owners Ass'n |
| 53CU 146-222-3002 | May 14, 2007 to May 14, 2008 | Overlook Condominium Unit Owners Ass'n |
| ACP CAF 2403259793 | May 14, 2008 to May 14, 2009 | Overlook Condominium Unit Owners Ass'n |
| ACP CAF 2413259793 | May 14, 2009 to May 14, 2010 | Overlook Condominium Unit Owners Ass'n |

The Nationwide Policies are subject to all their terms, conditions and exclusions, which are incorporated herein by reference with the same force and effect as though more fully set forth herein at length. On information and belief, the originals of the Nationwide Policies are or should be in the possession of Overlook.

## The Overlook Townhouses and Overlook's Coverage Claims

15.     Upon information and belief, Overlook owned certain real property in Richmond, Virginia, on which Overlook developed a condominium complex known as the Overlook Townhouses ("The Overlook Townhouses").

16.     Upon information and belief, Overlook is currently the owner of certain units in The Overlook Townhouses ("Unsold Overlook Townhouses").

4

17.    Upon information and belief, Overlook is the former owner of certain units in the The Overlook Townhouses which were sold to third-parties ("the Sold Overlook Townhouses").

18.    By letter, dated May 20, 2009, from counsel representing Overlook, Overlook informed Nationwide that Overlook determined that drywall imported from China ("Chinese Drywall") was installed in one or more of The Overlook Townhouses and that Overlook determined there was evidence of property damage that Overlook asserted was consistent with Chinese Drywall in one or more of the Overlook Townhouses. The letter from Overlook's counsel explained that the Chinese Drywall arrived in the United States on February 14, 2006, was supplied by Venture Supply, Inc. and installed at The Overlook Townhouses by The Porter-Blaine Corporation, a subcontractor to Parallel Design and Development, L.L.C., which was the general contractor employed by Overlook to building the townhouses.

19.    Overlook's counsel's May 20, 2009 letter specifically reference each of the policy numbers of the Nationwide Policies listed in Paragraph 14, above, and stated it was putting Nationwide on notice of "all potential claims for property damage; personal injury; breach of contract; breach of warranty; indemnification; contribution; and any and all other related claims arising from the use of [Chinese Drywall] in this project."

20.    By letter, dated May 29, 2009 from Overlook's counsel, Overlook informed Nationwide that Overlook's plan to address Chinese Drywall in the Overlook Townhouses, included, on a case-by-case basis, replacement of all drywall, including non-foreign boards; HVAC coils, air handler and related components; all electrical components (outlets, receptacles, etc.); all structured wiring and related devices; insulation through the house; corroded copper piping; carpeting and padding; kitchen and bathroom faucets, non-porcelain sinks; appliances; tile; lighting fixtures; and any related items damaged during remediation. Overlook's counsel's

letter stated that in exchange for performing these activities, Overlook would require homeowners to waiver personal injury and property damage claims against it.

21.    In an email communication from Overlook's counsel, dated June 15, 2009, Overlook informed Nationwide that Chinese Drywall was located in the following townhouses in The Overlook Townhouses: 801 Holly Street; 803 Holly Street; 805 Holly Street; 807 Holly Street; 809 Holly Street; 700 South Laurel Street; 702 South Laurel Street; 704 South Laurel Street; 706 South Laurel Street; 710 South Laurel Street; 714 South Pine Street; and 716 South Pine Street.

22.    Overlook has not informed Nationwide which of the activities listed in Paragraph 20, above, it performed or anticipates performing in connection with the townhouses listed in Paragraph 21, above, but Nationwide understands that Overlook has incurred and/or will incur certain costs in connection with addressing Chinese Drywall, including, without limitation, performing some or all of the activities listed in Paragraph 20, above, in one or more of The Overlook Townhouses, including, without limitation, the townhouses listed in Paragraph 21, above ("Replacement and/or Repair Costs"). Overlook has not informed Nationwide of the amount of the Replacement and/or Repair Costs in connection with any or all of the townhouses listed in Paragraph 21, above.

23.    Upon information and belief, Overlook contends it is entitled to recover Replacement and/or Repair Costs in connection with Chinese Drywall in one or more of The Overlook Townhouses, including, without limitation, one or more of the townhouses listed in Paragraph 21, above, under the property insurance coverages of the Nationwide Policies ("Overlook's Property Coverage Claims"). In a letter to Overlook's counsel, dated June 18, 2009, Nationwide reserved its rights as to Overlook's Property Coverage Claims.

24.    Upon information and belief, except for the Edmonds Lawsuits described in Paragraph 27, below, no underlying lawsuits have been filed against Overlook based on Chinese Drywall in one or more of the Overlook Townhouses and no written demands or claims have been made against Overlook by owners of any of the Overlook Townhouses based on Chinese Drywall in one or more of the Overlook Townhouses, but Overlook contends it is entitled to recover Replacement and/or Repair Costs in connection with Chinese Drywall in one or more of the Overlook Townhouses, including, without limitation, one or more of the townhouses listed in Paragraph 21, above, under the liability insurance coverages of the Nationwide Policies ("Overlook's Liability Coverage Claims"). In a letter to Overlook's counsel, dated June 4, 2009, Nationwide reserved its rights as to Overlook's Liability Coverage Claims.

## The Underlying Edmonds Lawsuit

25.    Upon information and belief, Edmonds purchased one of The Overlook Townhouses ("the Edmonds Townhouse").

26.    Upon information and belief, Edmonds contends Chinese Drywall was installed in the Edmonds Townhouse.

27.    On or about September 3, 2009, Edmonds filed a lawsuit captioned *Ricky L. Edmonds v. Parallel Design and Development, LLC*, Case No. CL09-5697 and venued in the Circuit Court for the City of Norfolk, Virginia ("Edmonds Lawsuit") alleging, as more particularly set forth in the pleadings therein, that defective Chinese Drywall was installed in the Edmonds Townhouse.

28.    Overlook contends Nationwide is obligated to defend and indemnify it in connection with the Edmonds Lawsuit under the liability coverages in the Nationwide Policies.

29.    Subject to a full and complete reservation of all of its rights, Nationwide has agreed to participate and is participating in the defense of Overlook in connection with the Edmonds Lawsuit.

### Justiciable Controversy

30.    A real, substantial and justiciable controversy exists between Nationwide and Defendants concerning Overlook's Property Coverage Claims, Overlook's Liability Coverage Claims and the Edmonds Lawsuit, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §§2201 and 2202.

### COUNT I

### Declaratory Judgment - Overlook's Property Coverage Claims
### (Against Overlook Defendants Only)

31.    Nationwide realleges and incorporates the allegations of Paragraphs 1 through 24 and 30 with the same force and effect as though more fully set forth herein at length.

32.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies with respect to Overlook's Property Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Overlook's Property Coverage Claims:

a.    The property coverage of the Nationwide Policies provides coverage only for direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies.

i.    To the extent Overlook's Property Coverage Claims do not involve direct physical loss of or damage to property, there is no coverage under the property coverage of the Nationwide Policies;

ii.    If Overlook's Property Coverage Claims involve direct physical loss of or damage to property, there is no coverage under the property coverage of the Nationwide Policies to the extent that the property that suffered direct physical loss or damage is not Covered Property, as defined in the Nationwide Policies;

iii.    If Overlook's Property Coverage Claims involve direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, there is no coverage under the property coverage of the Nationwide Policies to the extent that any such direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, is not at the premises described in the Declarations of the Nationwide Policies; and

iv.    If Overlook's Property Coverage Claims involve direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies, there is no coverage under the property coverage of the Nationwide Policies to the extent that any such direct physical loss of or damage to property was not caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies.

b.    If Overlook's Property Coverage Claims involve direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies, there is no coverage under the property coverage of the Nationwide Policies to the extent any such loss or damage is excluded or limited by exclusions or limitations in the Nationwide Policies for:

i.     loss or damage caused by or resulting from rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

ii.     loss or damage to personal property caused by the following cause of loss: dampness or dryness of atmosphere;

iii.     loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss";

iv.     loss or damage caused by or resulting from faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, or materials used in repair, construction, renovation or remodeling, of part or all of any property on or off the described premises; or

v.     loss or damage caused directly or indirectly by the continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days.

c.     If Overlook's Property Coverage Claims involve otherwise covered direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies, each of the Nationwide Policies only applies to any such loss or damage commencing during the policy period of such Nationwide Policy.

d.     The Nationwide Policies include a condition precedent, which provides that, in the event of loss or damage, the insured must provide Nationwide with prompt notice of the loss

10

or damage, including a description of the property involved, and, as soon as possible, give Nationwide a description of how, when and where the loss or damage occurred. To the extent the foregoing condition was breached in connection with Overlook's Property Coverage claims, there may be no obligation under the property coverage of the Nationwide Policies.

e.    The Nationwide Policies include a condition, which provides that if the building where loss or damage occurs has been vacant for more than 60 consecutive days before the loss or damage occurs, the amount that Nationwide would otherwise pay for the loss or damage is reduced by 15%. To the extent coverage otherwise exists for Overlook's Property Coverage Claims under the property coverage of the Nationwide Policies, any such coverage may be limited by said condition.

f.    If it is determined Nationwide is obligated under the property coverage of some or all of the Nationwide Policies to pay for some or all of Overlook's Property Coverage Claims, any such obligation is limited by various provisions in the Nationwide Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) Deductible provisions; (iii) Coinsurance percentage provisions; (iv) Loss Payment provisions; (v) Valuation provisions; and (vi) Other Insurance provisions.

g.    Any additional reasons that may become apparent through further investigation and discovery.

33.    Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Overlook, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

## COUNT II

### Declaratory Judgment - Overlook's Liability Coverage Claims – No Duty to Defend
### (Against Overlook Defendants Only)

34.    Nationwide realleges and incorporates by reference the allegations in Paragraphs 1 through 24 and 30, above, with the same force and effect as though more fully set forth herein at length.

Nationwide Primary Policies

35.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies that provide primary liability insurance coverage ("Nationwide Primary Policies") to defend Overlook in connection with Overlook's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Overlook's Liability Coverage Claims:

a.    There is no obligation under the Nationwide Primary Policies to defend Overlook in connection with the some or all of the claims, if any, against Overlook on which Overlook's Liability Coverage Claims are based ("the Purported Underlying Claims") to they extent they are not covered under the insuring agreements of the Nationwide Primary Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If any Purported Underlying Claim does not involve a "suit," as that term is defined and used in the Nationwide Primary Policies, against the insured, there is no obligation under the Nationwide Primary Policies to defend Overlook in connection with any such Purported Underlying Claim.

c.    If some or all of the Purported Underlying Claims involve a "suit," as that term is defined and used in the Nationwide Primary Policies, against the insured, there is no obligation under the Nationwide Primary Policies to defend Overlook in connection with any such

12

Purported Underlying Claim to the extent any such "suit" does not seek damages and allege "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Primary Policies.

      d.     If some or all of the Purported Underlying Claims involve a "suit" against the insured seeking damages alleging "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to defend Overlook in connection with any such Purported Underlying Claim to the extent that:

      i.     any such "suit" does not allege "property damage" or "bodily injury" during the policy period of any such Nationwide Primary Policy;

      ii.     prior to the policy period of any such Nationwide Primary Policy, the insured knew that any such alleged "property damage" or "bodily injury" had occurred, in whole or in part; or

      iii.     such alleged "property damage" or "bodily injury" did not first "manifest," as that term is defined and used in any such Nationwide Primary Policy, during the policy period of any such Nationwide Primary Policy.

      e.     If some or all of the Purported Underlying Claims involve a "suit" against the insured seeking damages alleging "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to defend Overlook in connection with any such Purported Underlying Claim to the extent the allegations of any such "suit" fall within exclusions in some or all of the Nationwide Primary Policies, which provide that this insurance does not apply to:

    i.    "Bodily injury" and "property damage" which "manifests" prior to the inception of this policy or after termination of this policy;

    ii.    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured;

    iii.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

    iv.    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    v.    "Property damage" to property you own, rent or occupy; property you sell, give away or abandon, if the "property damage" arises out of any part of those premises; property loaned to you; personal property in the care, custody or control of the insured; that particular part or real property on which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it;

    vi.    "Property damage" to "your product" arising out of it or any part of it;

    vii.    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"; or

    viii.    "Property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in

"your product" or "your work", or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

      f.    The Nationwide Primary Policies include conditions precedent, which provide that:

      i.    The insured must see to it that Nationwide is notified as soon as practicable of an "occurrence" or an offense which may result in a claim and, to the extent possible, notice should include how, when and where the "occurrence" or offense took place; the names and addresses of any injured persons and witnesses; and the nature and location of any injury or damage arising out of the "occurrence" or offense; and

      ii.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without Nationwide's consent.

To the extent the foregoing conditions were breached in connection with any Purported Underlying Claims that involve an otherwise covered "suit," there may be no obligation under the Nationwide Primary Policies to defend Overlook in connection with any such Purported Underlying Claim.

Nationwide Umbrella Policies

      36.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies incepting prior to 2008 that provide commercial umbrella liability coverage ("Nationwide Umbrella Policies") to defend Overlook in connection with Overlook's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Overlook's Liability Coverage Claims:

      a.    There is no obligation under the Nationwide Umbrella Policies to defend

Overlook in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the Nationwide Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

    b.    If any Purported Underlying Claim does not involve a suit against the "insured," as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim.

    c.    If some or all of the Purported Underlying Claims involve a suit against the "insured," as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim to the extent:

    i.    any such suit does not seek damages and allege "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies; or

    ii.    the "underlying limit" of the "underlying insurance," as those terms are defined and used in the Nationwide Umbrella Policies, has not been exhausted by payment of loss.

    d.    If some or all of the Purported Underlying Claims involve a suit against the "insured" seeking damages alleging "property damage" or "bodily injury" caused by an "occurrence" and the "underlying limit" of the "underlying insurance" has been exhausted by payment of loss, as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim to the extent that:

16

i.      any such suit does not allege "property damage" or "bodily injury" during the policy period of any such Nationwide Umbrella Policy; or

ii.      prior to the policy period of any such Nationwide Umbrella Policy, the insured knew that any such "property damage" or "bodily injury" had occurred, in whole or in part.

e.      If some or all of the Purported Underlying Claims involve a suit against the "insured" seeking damages alleging "property damage" or "bodily injury" caused by an "occurrence" and the "underlying limit" of the "underlying insurance" has been exhausted by payment of loss, as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under some or all of the Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim to the extent the allegations of any such suit fall within exclusions in some or all of the Nationwide Umbrella Policies, which provide that this insurance does not apply:

i.      To bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

ii.      To bodily injury or property damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;

iii.      To property damage to property owned by the insured;

iv.      To property damage to property rented to, occupied or used by or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

v.      To property damage to your products if the property damage arises out of

such products or any part of such products, or work performed by you if the property damage arises out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; or

      vi.    To loss of use of tangible property which has not been physically injured or destroyed resulting from a delay or lack of performance by you or on your behalf of any contract or agreement, or the failure of your products or work performed by you or on your behalf to meet the level of performance, quality, fitness or durability warranted or represented by you.

      f.    The Nationwide Umbrella Policies include conditions precedent, which provide that:

      i.    The insured must promptly notify Nationwide or its agent of any occurrence; tell us how, when and where the occurrence happened; assist in obtaining the names and addresses of any injured persons and witnesses; and

      ii.    No insured shall, except at their own cost, voluntarily make any payment, assume any obligation or incur any expense.

To the extent the foregoing conditions were breached in connection with any Purported Underlying Claims that involve an otherwise covered suit, there may be no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim.

      g.    The Nationwide Umbrella Policies include a condition precedent, which provides that the insurance is excess over any other collectible insurance. If some or all of the Purported Underlying Claims involve an otherwise covered suit, there is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with any such Purported

Underlying Claim to the extent the foregoing condition applies.

2008-2010 Nationwide Umbrella Policies

37.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies incepting in 2008 and thereafter that provide commercial umbrella liability coverage ("the 2008-2010 Nationwide Umbrella Policies") to defend Overlook in connection with Overlook's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Overlook's Liability Coverage Claims:

a.    There is no obligation under the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the 2008-2010 Nationwide Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If the applicable limit of "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, has not been exhausted by payment of claims or if any Purported Underlying Claim falls within the exclusions applicable to the "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, which are made applicable to Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Polices, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim.

c.    If the applicable limit of "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, has been exhausted by payment of claims, the

terms and conditions of the "underlying insurance" are made a part of the Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies, except with respect to any contrary provision in the 2008-2010 Nationwide Umbrella Policies or any provision in the 2008-2010 Nationwide Umbrella Policies for which a similar provision is not contained in the "underlying insurance," and to the extent there is no obligation to defend Overlook in connection with some or all of the Purported Underlying Claims under the "underlying insurance," there is no obligation to defend Overlook in connection with any such Purported Underlying Claims under Coverage A- Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies.

     d.    If the applicable limit of "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, has been exhausted by payment of claims, there is no obligation to defend Overlook in connection with any Purported Underlying Claims under Coverage A- Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to the extent any such Purported Underlying Claim was settled without Nationwide's consent.

     e.    If some or all of the Purported Underlying Claims are not for damages for alleged "property damage" or "bodily injury," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim.

     f.    If some or all of the Purported Underlying Claims seek damages for alleged "property damage" or "bodily injury," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability

Insurance of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim to the extent that:

     i.    prior to the policy period of any such 2008-2010 Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part;

     ii.    "underlying insurance" or "other insurance," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, applies to any such Purported Underlying Claim;

     iii.    any alleged "property damage" or "bodily injury" was not caused by an "occurrence," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies; or

     iv.    any alleged "property damage" or "bodily injury" did not take place during the policy period of the 2008-2010 Nationwide Umbrella Policies.

     g.    If some or all of the Purported Underlying Claims seek damages for alleged "property damage" or "bodily injury" caused by an "occurrence" and no "underlying insurance" or "other insurance," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, applies to any such Purported Underlying Claim, there is no obligation under Coverage B – Umbrella Liability Insurance of some or all of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim to the extent the allegations thereof fall within exclusions in some or all of the 2008-2010 Nationwide Umbrella Policies, which provide that Coverage B does not apply to:

     i.    "Property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in "your

product" or "your work", or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms;

ii.    "Property damage" to property you own; that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it; or any damage to real or personal property, if the property is in the care, custody or control of the "insured" or as to which the "insured" is for any purpose exercising physical control;

iii.    "Property damage" to "your product" arising out of it or any part of it;

iv.    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard";

v.    "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured";

vi.    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or

vii.    Any punitive or exemplary damages, fines or penalties.

h.    The 2008-2010 Nationwide Umbrella Policies include conditions precedent, which provide that:

i.    The insured must see to it that Nationwide and the insured's underlying insurers are notified as soon as possible of any "occurrence" which may result in a claim if the

claim may involve this insurance or any "underlying insurance" and receive notice of the claim or "suit" as soon as possible;

    ii.    The insured not make any admission of liability; and

    iii.    The insured not, unless Nationwide agrees, incur any expense or make any payment other than for first aid. Any such unauthorized expenses will be the insured's own cost. To the extent the foregoing conditions were breached in connection with any otherwise covered Purported Underlying Claim, there may be no obligation under the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim.

    i.    The 2008-2010 Nationwide Umbrella Policies include a condition precedent, which provides that if "other insurance" applies to claims covered by these policies, the insurance under these policies is excess and will not make any payments until the "other insurance" has been exhausted by payment of claims. To the extent "other insurance" applies to any otherwise covered Purported Underlying Claim, there is no obligation under the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any such Purported Underlying Claim.

    38.    If it is determined Nationwide is obligated under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any Purported Underlying Claim, any purported costs of defending any such Purported Underlying Claim incurred prior to proper tender to Nationwide of the defense of any such Purported Underlying Claim or that are not reasonable and necessary costs of defending any such Purported Underlying Claim are not recoverable.

    39.    If it is determined Nationwide is obligated under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella

Policies to defend Overlook in connection with any of the Purported Underlying Claims, any such obligation is limited by various provisions in the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) limits of liability provisions; (iii) per occurrence and aggregate limits of liability provisions; (iv) other insurance provisions; and (v) a provision that if more than one Nationwide Policy applies to the same occurrence, the total maximum amount payable by Nationwide shall not exceed the highest applicable limit under any one Nationwide Policy.

40.    If Nationwide is adjudicated liable to any extent under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with any of the Purported Underlying Claims, Nationwide is entitled to a declaration and adjudication as to the extent and amount of any such liability, taking into account all of the applicable insurance policies which Overlook has or had with any other insurance company, any self-insurance provided by Overlook, and all other such factors as may bear on this issue.

41.    Nationwide reserves its rights to assert any additional reasons that may become apparent through further investigation and discovery.

42.    Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Overlook, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

## COUNT III

### Declaratory Judgment – Overlook's Liability Coverage Claims – No Duty to Indemnify
### (Against Overlook Defendants Only)

43.    Nationwide realleges and incorporates by reference the allegations in Paragraphs 1 through 24 and 30, above, with the same force and effect as though more fully set forth herein at length.

Nationwide Primary Policies

44.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Primary Policies to indemnify Overlook in connection with Overlook's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Overlook's Liability Coverage Claims:

a.    There is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the Nationwide Primary Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If any Purported Underlying Claim does not involve sums that the insured becomes legally obligated to pay as damages, as that term is used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with any such Purported Underlying Claim.

c.    If some or all of the Purported Underlying Claims involve sums that the insured becomes legally obligated to pay as damages, as that term is used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent it does not involve "property

25

damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Primary Policies.

    d.    If some or all of the Purported Underlying Claims involve sums that the insured becomes legally obligated to pay as damages because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent that:

    i.    it does not involve "property damage" or "bodily injury" during the policy period of any such Nationwide Primary Policy;

    ii.    prior to the policy period of any such Nationwide Primary Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part; or

    iii.    such "property damage" or "bodily injury" did not first "manifest," as that term is defined and used in such Nationwide Primary Policies, during the policy period of such Nationwide Primary Policy.

    e.    If some or all of the Purported Underlying Claims involve sums that the insured becomes legally obligated to pay as damages because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, there is no obligation under some or all of the Nationwide Primary Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent it falls within exclusions in some or all of the Nationwide Primary Policies listed in Paragraph 35(e), above, which are incorporated herein by reference.

f.    The Nationwide Primary Policies include conditions precedent listed in Paragraph 35(f), above, which are incorporated herein by reference. To the extent the foregoing conditions were breached in connection with any otherwise covered Purported Underlying Claim, there may be no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with any such Purported Underlying Claim.

## Nationwide Umbrella Policies

45.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Umbrella Policies to indemnify Overlook in connection with Overlook's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Overlook's Liability Coverage Claims:

a.    There is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the Nationwide Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If any Purported Underlying Claim does not involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim.

c.    If some or all of the Purported Underlying Claims involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported

Underlying Claim to the extent it does not involve "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies.

     d.     If some or all of the Purported Underlying Claims involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent that:

     i.     any such "property damage" or "bodily injury" did not take place during the policy period of any such Nationwide Umbrella Policy; or

     ii.     prior to the policy period of any such Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part.

     e.     If some or all of the Purported Underlying Claims involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under some or all of the Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent it falls within exclusions in some or all of the Nationwide Umbrella Policies listed in Paragraph 36(e), which are incorporated herein by reference.

     f.     The Nationwide Umbrella Policies include conditions precedent listed in Paragraphs 36(f) and (g), above, which are incorporated herein by reference. To the extent the foregoing conditions were breached or apply in connection with any otherwise covered Purported Underlying Claims, there is no obligation under the Nationwide Umbrella Policies to

indemnify Overlook in connection with any such Purported Underlying Claim.

2008-2010 Nationwide Umbrella Policies

46.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with Overlook's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Overlook's Liability Coverage Claims:

a.    There is no obligation under the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the 2008-2010 Nationwide Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If any Purported Underlying Claim does not involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim.

c.    If some or all of the Purported Underlying Claims involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent it falls within the exclusions applicable to the "underlying insurance," as that term is defined and used in the

2008-2010 Nationwide Umbrella Policies, which are made applicable to Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Polices.

d.    If some or all of the Purported Underlying Claims involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, the terms and conditions of the "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, are made a part of the Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies, except with respect to any contrary provision in the 2008-2010 Nationwide Umbrella Policies or any provision in the 2008-2010 Nationwide Umbrella Policies for which a similar provision is not contained in the "underlying insurance," and to the extent there is no obligation to indemnify Overlook in connection with some or all of the Purported Underlying Claims under the "underlying insurance," there is no obligation to indemnify Overlook in connection with any such Purported Underlying Claims under Coverage A- Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies.

e.    If some or all of the Purported Underlying Claims involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation to indemnify Overlook in connection with any such Purported Underlying Claim under Coverage A- Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to the extent any such Purported Underlying Claim was settled without Nationwide's consent.

f.    If any Purported Underlying Claim is not for damages, as that term is used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella

Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim.

      g.     If some or all of the Purported Underlying Claims are for damages, as that term is used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent any damages are not damages the "insured" is legally obligated to pay by reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies.

      h.     If some or all of the Purported Underlying Claims are for damages the "insured" becomes legally obligated to pay by reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent that:

      i.     prior to the policy period of any such 2008-2010 Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part;

      ii.     insurance for any such Purported Underlying Claim is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies;

iii.    any "property damage" or "bodily injury" was not caused by an "occurrence," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies; or

iv.    any "property damage" or "bodily injury" did not take place during the policy period of the 2008-2010 Nationwide Umbrella Policies.

i.    If some or all of the Purported Underlying Claims are for damages the "insured" becomes legally obligated to pay by reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury" caused by an "occurrence" and no coverage is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of some or all of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim to the extent it falls within exclusions in some or all of the 2008-2010 Nationwide Umbrella Policies listed in Paragraph 37(g), above, which are incorporated herein by reference.

j.    The 2008-2010 Nationwide Umbrella Policies include conditions precedent listed in Paragraphs 37(h) and (i), above, which are incorporated herein by reference. To the extent the foregoing conditions were breached or apply in connection with any otherwise covered Purported Underlying Claim, there may be no obligation under the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any such Purported Underlying Claim.

47.    If it is determined Nationwide is obligated under the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to indemnify

Overlook in connection with any of the Purported Underlying Claims, any such obligation is limited by various provisions in the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) limits of liability provisions; (iii) per occurrence and aggregate limits of liability provisions; (iv) other insurance provisions; and (v) a provision that if more than one Nationwide Policy applies to the same occurrence, the total maximum amount payable by Nationwide shall not exceed the highest applicable limit under any one Nationwide Policy.

48.    If Nationwide is adjudicated liable to any extent under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with any of the Purported Underlying Claims, Nationwide is entitled to a declaration and adjudication as to the extent and amount of any such liability, taking into account all of the applicable insurance policies which Overlook has or had with any other insurance company, any self-insurance provided by Overlook, and all other such factors as may bear on this issue.

49.    Nationwide reserves its rights to assert any additional reasons that may become apparent through further investigation and discovery.

50.    Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Overlook, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

## COUNT IV

### Declaratory Judgment – Edmonds Lawsuit – No Duty to Defend
### (Against Overlook Defendants Only)

51.    Nationwide realleges and incorporates by reference the allegations in Paragraphs 1 through 30, above, with the same force and effect as though more fully set forth herein at length.

Nationwide Primary Policies

52.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Primary Policies to defend Overlook in connection with the Edmonds Lawsuit in consideration of the following grounds, *inter alia*, as they may apply to Overlook's claim for coverage in connection with the Edmonds Lawsuit:

a.    There is no obligation under the Nationwide Primary Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent it is not covered under the insuring agreements of the Nationwide Primary Policies or is excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If the Edmonds Lawsuit does not allege "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to defend Overlook in connection with the Edmonds Lawsuit.

c.    If the Edmonds Lawsuit alleges "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent that:

34

i.      it does not allege "property damage" or "bodily injury" during the policy period of any such Nationwide Primary Policy;

ii.      prior to the policy period of any such Nationwide Primary Policy, the insured knew that any such alleged "property damage" or "bodily injury" had occurred, in whole or in part; or

iii.      such alleged "property damage" or "bodily injury" did not first "manifest," as that term is defined and used in any such Nationwide Primary Policy, during the policy period of any such Nationwide Primary Policy.

d.      If the Edmonds Lawsuit alleges "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent the allegations thereof fall within exclusions in some or all of the Nationwide Primary Policies listed in Paragraph 35(e), above, which are incorporated herein by reference.

e.      The Nationwide Primary Policies include conditions precedent listed in Paragraph 35(f), above.  To the extent the foregoing conditions were breached in connection with the Edmonds Lawsuit, there may be no obligation under the Nationwide Primary Policies to defend Overlook in connection with the Edmonds Lawsuit.

Nationwide Umbrella Policies

53.      Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit in consideration of the following grounds, *inter alia*, as they may apply to the Edmonds Lawsuit:

a.     There is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent it is not covered under the insuring agreements of the Nationwide Umbrella Policies or is excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.     If the Edmonds Lawsuit does not allege "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit.

c.     If the Edmonds Lawsuit alleges "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent the "underlying limit" of the "underlying insurance," as those terms are defined and used in the Nationwide Umbrella Policies, has not been exhausted by payment of loss.

d.     If the Edmonds Lawsuit alleges "property damage" or "bodily injury" caused by an "occurrence" and the "underlying limit" of the "underlying insurance" has been exhausted by payment of loss, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent that:

i.     it does not allege "property damage" or "bodily injury" during the policy period of any such Nationwide Umbrella Policy; or

ii.     prior to the policy period of any such Nationwide Umbrella Policy, the insured knew that any such "property damage" or "bodily injury" had occurred, in whole or in

36

part.

e.     If the Edmonds Lawsuit alleges "property damage" or "bodily injury" caused by an "occurrence" and the "underlying limit" of the "underlying insurance" has been exhausted by payment of loss, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under some or all of the Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent the allegations thereof fall within exclusions in some or all of the Nationwide Umbrella Policies listed in Paragraph 36(e), above, which are incorporated herein by reference.

f.     The Nationwide Umbrella Policies include conditions precedent listed in Paragraphs 36(f) and (g), which are incorporated herein by reference.  To the extent the foregoing conditions were breached or apply in connection with the Edmonds Lawsuit, there may be no obligation under the Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit.

2008-2010 Nationwide Umbrella Policies

54.     Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit in consideration of the following grounds, *inter alia*, as they may apply to the Edmonds Lawsuit:

a.     There is no obligation under the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent it is not covered under the insuring agreements of the 2008-2010 Nationwide Umbrella Policies or is excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If the applicable limit of "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, has not been exhausted by payment of claims or if the Edmonds Lawsuit falls within the exclusions applicable to the "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, which are made applicable to Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Polices, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit.

c.    If the applicable limit of "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies has been exhausted by payment of claims, the terms and conditions of the "underlying insurance" are made a part of the Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies, except with respect to any contrary provision contained in the 2008-2010 Nationwide Umbrella Policies or any provision in the 2008-2010 Nationwide Umbrella Policies for which a similar provision is not contained in the "underlying insurance," and to the extent there is no obligation to defend Overlook in connection with the Edmonds Lawsuit under the "underlying insurance," there is no obligation to defend Overlook in connection with the Edmonds Lawsuit under Coverage A- Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies.

d.    If the Edmonds Lawsuit does not allege "property damage" or "bodily injury," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit.

e.      If the Edmonds Lawsuit alleges "property damage" or "bodily injury," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent that:

i.      prior to the policy period of any such 2008-2010 Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part;

ii.      "underlying insurance" or "other insurance," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, applies to the Edmonds Lawsuit;

iii.      any alleged "property damage" or "bodily injury" was not caused by an "occurrence," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies; or

iv.      any alleged "property damage" or "bodily injury" did not take place during the policy period of the 2008-2010 Nationwide Umbrella Policies.

f.      If the Edmonds Lawsuit alleges "property damage" or "bodily injury" caused by an "occurrence" and no "underlying insurance" or "other insurance," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, applies to the Edmonds Lawsuit, there is no obligation under Coverage B – Umbrella Liability Insurance of some or all of the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit to the extent the allegations thereof fall within exclusions in some or all of the 2008-2010 Nationwide Umbrella Policies listed in Paragraph 37(g), above, which are incorporated herein by reference.

g.    The 2008-2010 Nationwide Umbrella Policies include conditions precedent listed in Paragraphs 37(h) and (i), above. To the extent the foregoing conditions were breached or apply in connection with the Edmonds Lawsuit, there may be no obligation under the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit.

55.    If it is determined Nationwide is obligated under some of all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit, any purported costs of defending the Edmonds Lawsuit incurred prior to proper tender to Nationwide of the defense of the Edmonds Lawsuit or that are not reasonable and necessary costs of defending the Edmonds Lawsuit are not recoverable.

56.    If it is determined Nationwide is obligated under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit any such obligation is limited by various provisions in the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) limits of liability provisions; (iii) per occurrence and aggregate limits of liability provisions; (iv) other insurance provisions; and (v) a provision that if more than one Nationwide Policy applies to the same occurrence, the total maximum amount payable by Nationwide shall not exceed the highest applicable limit under any one Nationwide Policy.

57.    If Nationwide is adjudicated liable to any extent under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to defend Overlook in connection with the Edmonds Lawsuit, Nationwide is

entitled to a declaration and adjudication as to the extent and amount of any such liability, taking into account all of the applicable insurance policies which Overlook has or had with any other insurance company, any self-insurance provided by Overlook, and all other such factors as may bear on this issue.

58.    Nationwide reserves its rights to assert any additional reasons that may become apparent through further investigation and discovery.

59.    Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Overlook, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

## COUNT V

### Declaratory Judgment – Edmonds Lawsuit – No Duty to Indemnify
### (Against All Defendants)

60.    Nationwide realleges and incorporates by reference the allegations in Paragraphs 1 through 30, above, with the same force and effect as though more fully set forth herein at length.

Nationwide Primary Policies

61.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Primary Policies to indemnify Overlook in connection with the Edmonds Lawsuit in consideration of the following grounds, *inter alia*, as they may apply to the Edmonds Lawsuit:

a.    There is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it is not covered under the insuring agreements of the Nationwide Primary Policies or is excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If Overlook becomes legally obligated to pay any sums in connection with the Edmonds Lawsuit, there is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent any such sums are not sums that the insured becomes legally obligated to pay as damages, as that term is used in the Nationwide Primary Policies.

c.    If Overlook becomes legally obligated to pay sums as damages, as that term is used in the Nationwide Primary Policies, in connection with the Edmonds Lawsuit, there is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent any such sums are not amounts that the insured becomes legally obligated to pay as damages because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies.

d.    If Overlook becomes legally obligated to pay sums as damages because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, in connection with the Edmonds Lawsuit, there is no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent that:

i.    any such sums are not amounts that the insured becomes legally obligated to pays as damages because of "property damage" or "bodily injury" during the policy period of any such Nationwide Primary Policy;

ii.    prior to the policy period of any such Nationwide Primary Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part; or

iii.    such "property damage" or "bodily injury" did not first "manifest," as that term is defined and used in such Nationwide Primary Policies, during the policy period of any such Nationwide Primary Policy.

e.    If Overlook becomes legally obligated to pay sums as damages because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, in connection with the Edmonds Lawsuit, there is no obligation under some or all of the Nationwide Primary Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it falls within exclusions in some or all of the Nationwide Primary Policies listed in Paragraph 35(e), above, which are incorporated herein by reference.

f.    The Nationwide Primary Policies include conditions precedent listed in Paragraph 34(f), above, which are incorporate herein by reference.  To the extent the foregoing conditions were breached in connection with the Edmonds Lawsuit, there may be no obligation under the Nationwide Primary Policies to indemnify Overlook in connection with the Edmonds Lawsuit.

Nationwide Umbrella Policies

62.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit in consideration of the following grounds, *inter alia*, as they may apply to the Edmonds Lawsuit:

a.    There is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it is not covered under the insuring agreements of the Nationwide Umbrella Policies or is excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If the Edmonds Lawsuit does not involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit.

c.    If the Edmonds Lawsuit involves "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it does not involve "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies.

d.    If the Edmonds Lawsuit involves "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent that:

i.    any such "property damage" or "bodily injury" did not take place during the policy period of any such Nationwide Umbrella Policy or

ii.    prior to the policy period of any such Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part.

e.    If the Edmonds Lawsuit involves "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under some or all of the Nationwide Umbrella Policies

to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it falls within exclusions in some or all of the Nationwide Umbrella Policies listed in Paragraph 36(e), which are incorporated herein by reference.

f.    The Nationwide Umbrella Policies include conditions precedent listed in Paragraphs 36(f) and (g), above, which are incorporated herein by reference. To the extent the foregoing conditions were breached or apply in connection with the Edmonds Lawsuit, there may be no obligation under the Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit.

2008-2010 Nationwide Umbrella Policies

63.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit in consideration of the following grounds, *inter alia*, as they may apply to the Edmonds Lawsuit:

a.    There is no obligation under the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it is not covered under the insuring agreements of the 2008-2010 Nationwide Umbrella Policies or is excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If the Edmonds Lawsuit does not involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit.

45

c.      If the Edmonds Lawsuit involves "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it falls within the exclusions applicable to the "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, which are made applicable to Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Polices.

d.      If the Edmonds Lawsuit involves "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2008-2010 Nationwide Umbrella Policies, the terms and conditions of the "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies, are made a part of the Coverage A – Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies, except with respect to any contrary provision contained in the 2008-2010 Nationwide Umbrella Policies or any provision in the 2008-2010 Nationwide Umbrella Policies for which a similar provision is not contained in the "underlying insurance," and to the extent there is no obligation to indemnify Overlook in connection with the Edmonds Lawsuit under the "underlying insurance," there is no obligation to indemnify Overlook in connection with the Edmonds Lawsuit under Coverage A-Excess Follow Form Liability Insurance of the 2008-2010 Nationwide Umbrella Policies.

e.      If the Edmonds Lawsuit is not for damages the "insured" becomes legally obligated to pay by reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella

46

Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit.

      f.      If the Edmonds Lawsuit is for damages the "insured" becomes legally obligated to pay by reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent that:

      i.      prior to the policy period of any such 2008-2010 Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part.;

      ii.      insurance for the Edmonds Lawsuit is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies;

      iii.      any "property damage" or "bodily injury" was not caused by an "occurrence," as that term is defined and used in the 2008-2010 Nationwide Umbrella Policies; or

      iv.      any "property damage" or "bodily injury" did not take place during the policy period of the 2008-2010 Nationwide Umbrella Policies.

      h.      If the Edmonds Lawsuit is for damages the "insured" becomes legally obligated to pay be reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury" caused by an "occurrence" and no coverage is afforded

under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of some or all of the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit to the extent it falls within exclusions in some or all of the 2008-2010 Nationwide Umbrella Policies listed in Paragraph 37(g), above, which are incorporated herein by reference.

      i.     The 2008-2010 Nationwide Umbrella Policies include conditions precedent lilsted in Paragraphs 37(h) and (i), above, which are incorporated herein by reference. To the extent the foregoing conditions were breached or apply in connection with the Edmonds Lawsuit, there may be no obligation under the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit.

      64.     If it is determined Nationwide is obligated under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit, any such obligation is limited by various provisions in the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) limits of liability provisions; (iii) per occurrence and aggregate limits of liability provisions; (iv) other insurance provisions; and (v) a provision that if more than one Nationwide Policy applies to the same occurrence, the total maximum amount payable by Nationwide shall not exceed the highest applicable limit under any one Nationwide Policy.

      65.     If Nationwide is adjudicated liable to any extent under some or all of the

Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2008-2010 Nationwide Umbrella Policies to indemnify Overlook in connection with the Edmonds Lawsuit, Nationwide is entitled to a declaration and adjudication as to the extent and amount of any such liability, taking into account all of the applicable insurance policies which Overlook has or had with any other insurance company, any self-insurance provided by Overlook, and all other such factors as may bear on this issue.

66.    Nationwide reserves its rights to assert any additional reasons that may become apparent through further investigation and discovery.

67.    Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Overlook, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

WHEREFORE, Nationwide prays for judgment as follows:

1.    Declaring Nationwide has no obligations under the property coverages of the Nationwide Policies in connection with the Overlook Property Coverage Claims;

2.    Alternatively, declaring the extent of Nationwide's obligations under the property coverages of the Nationwide Policies in connection with the Overlook Property Coverage Claims;

3.    Declaring Nationwide has no obligation under the Nationwide Policies to defend Overlook in connection with the Overlook Liability Coverage Claims;

4.    Alternatively, declaring the extent of Nationwide's obligations under the Nationwide Policies to defend Overlook in connection with the Overlook Liability Coverage Claims;

5.    Declaring Nationwide has no obligation under the Nationwide Policies to indemnify Overlook in connection with the Overlook Liability Coverage Claims;

6.    Alternatively, declaring the extent of Nationwide's obligations under the Nationwide Policies to indemnify Overlook in connection with the Overlook Liability Coverage Claims;

7.    Declaring Nationwide has no obligation under the Nationwide Policies to defend Overlook in connection with the Edmonds Lawsuit;

8.    Alternatively, declaring the extent of Nationwide's obligations under the Nationwide Policies to defend Overlook in connection with the Edmonds Lawsuit;

9.    Declaring Nationwide has no obligation under the Nationwide Policies to indemnify Overlook in connection with the Edmonds Lawsuit;

10.    Alternatively, declaring the extent of Nationwide's obligations under the Nationwide Policies to indemnify Overlook in connection with the Edmonds Lawsuit;

11.    Awarding Nationwide its attorneys fees, costs and disbursements; and

12.    Such other and further relief as this Court may deem just and proper.

**NATIONWIDE REQUESTS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

Dated: January 19, 2010

Respectfully submitted,

NATIONWIDE MUTUAL INSURANCE
COMPANY, NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY and NATIONWIDE
PROPERTY & CASUALTY INSURANCE
COMPANY
By Counsel

MORRIS & MORRIS, PC

Lawrence A. Dunn
Virginia State Bar #30324
Grant E. Kronenberg
Virginia State Bar #65647
Attorneys for Plaintiffs
Morris & Morris P.C.
700 East Main Street
Suite 1100
P.O. Box 30
Richmond, VA  23218-0030
Tel. (804) 344-8300
Fax  (804) 344-8359
ldunn@morrismorris.com
gkronenberg@morrismorris.com